IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BB & T INSURANCE SERVICES, INC.**, | : | |
| Plaintiff, | : | Civil Action 2:06-CV-09 |
| v. | : | Judge Frost |
| **OHIO DEPARTMENT OF INSURANCE**, *et al.* | | Magistrate Judge Kemp |
| | : | |
| Defendants. | | |

## ORDER

Defendants Ohio Department of Insurance ("ODI" or "Department") and Ann Womer Benjamin[1] ("Benjamin"), ODI's Superintendent of Insurance, move to dismiss Plaintiff BB & T Insurance Services, Inc.'s ("BB & T") Complaint pursuant to Fed. Rs. Civ. P. 12(b)(1) & 12(b)(6). (Doc. # 8). After reading the parties' briefs (Docs. # # 8, 9, 10), the Court is convinced that it should abstain from exercising jurisdiction in this matter under *Younger v. Harris,* 401 U.S. 37 (1971). Accordingly, the Court **GRANTS** the Defendants' motion to dismiss. (Doc. # 8).

## BACKGROUND

BB & T, a North Carolina corporation, engages in the sale of title insurance. (Doc. # 1 ¶ 7). Ohio Revised Code § 3901.01 establishes that ODI "shall have all powers and perform all duties formerly vested in and imposed upon the department of commerce and the superintendent of insurance." Benjamin, as ODI's Superintendent, is the chief executive officer and director of the Department and retains "all the powers [to] perform all the duties vested in and imposed

---

[1] BB & T sues Benjamin in her official capacity only. (Doc. # 1).

1

upon the department of insurance." R.C. § 3901.011.

On June 3, 2004, BB & T submitted an application to ODI for a license to operate in Ohio as a non-resident title insurance agent. (Doc. # 1 ¶ 11). BB & T's application was based on Ohio Revised Code § 3905.07, which provides:

> The superintendent of insurance shall issue a nonresident insurance agent license to an applicant that is a nonresident person if the superintendent finds all of the following:
>
> (1) The applicant is currently licensed as a resident and is in good standing in the applicant's home state.
>
> (2) The applicant has submitted the request for licensure prescribed by the superintendent.
>
> (3) The applicant has submitted or has had transmitted to the superintendent the application for licensure that the applicant submitted to the applicant's home state or a completed uniform application or uniform business entity application, as applicable.
>
> (4) The applicant has not committed any act that is a ground for the denial, suspension, or revocation of a license under section 3905.14 of the Revised Code.
>
> (5) The applicant is of good reputation and character, is honest and trustworthy, and is otherwise suitable to be licensed.
>
> (6) The applicant's home state issues nonresident insurance agent licenses to residents of this state on the same basis as set forth in division (A) of this section.

BB & T attached several documents to its application indicating that it satisfied the statute's requirements. (Doc. # 1 Ex. 2). Thereafter, the parties engaged in extensive discussions about BB & T's application. (Doc. # 1 Exs. 5, 6).[2]

---

[2] "'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

On December 9, 2005, ODI sent BB & T a "Notice of Opportunity for Hearing" ("Notice") indicating that Benjamin "*intends* to refuse to issue [BB & T] a nonresident business entity tile insurance agent license." (Doc. # 1 Ex. 3) (emphasis added). The Notice indicated that the Department had conducted an investigation of BB & T and found that the corporation "is prohibited by the laws and/or regulations of this state from being licensed as a business entity title insurance agent." *Id.* Specifically, the Notice stated:

> BB & T ... is a subsidiary of Branch Banking and Trust Company, a state bank. Pursuant to section 3953.21(B) of the Revised Code, "No bank, trust company, bank and trust company, or other lending institution, mortgage service, brokerage, mortgage guaranty company, escrow company, real estate company or any subsidiaries thereof or any individuals so engaged shall be permitted to act as an agent for a title insurance company."

The Notice further informed BB & T of its right to a hearing pursuant to Ohio Rev. Code Chapter 119. *Id.*

BB & T filed its request for a hearing with ODI on January 6, 2006. That same day, BB & T filed the instant action. (Doc. # 1). In essence, BB & T's Complaint asserts that the Graham-Leach-Bliley Financial Modernization Act ("GLBA"), 15 U.S.C. § 6701 *et seq.*, preempts Ohio Rev. Code § 3953.21(B) pursuant to the Supremacy Clause of the United States Constitution. (Doc. # 1). BB & T seeks a declaration to that effect, as well as an injunction "to preclude Defendants from holding its administrative hearing . . . and to preclude Defendants from

---

applying Ohio Rev. Code § 3953.21(B) to deny BB & T a license to sell title insurance in Ohio." *Id.* at ¶ ¶ 60, 62.

Two motions are currently pending before the Court–BB & T's motion for a temporary restraining order and Defendants' motion to dismiss for lack of jurisdiction. (Docs. # # 5, 8). Jurisdiction, of course, is a threshold issue in every case. However, BB & T's motion for a temporary restraining order presents time constraints. (Doc. # 6). Accordingly, the Court has established an expedited briefing schedule on the jurisdictional issue. Because the Court holds below that it should abstain from exercising jurisdiction in this matter, the Court will not address BB & T's motion for a temporary restraining order and injunctive relief. (Doc. # 5).

## DISCUSSION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § § 1331, 1332, and 1343. Defendants assert multiple grounds in support of their motion to dismiss. (Doc. # 8). Because the Court concludes that Defendants' reliance on *Younger* is dispositive, the Court need not address Defendants' alternative grounds for dismissal.[3]

In *Younger*, the United States Supreme Court held that absent unusual circumstances, federal courts could not interfere with a pending state criminal proceeding. *Younger*, 401 U.S. at 37. The Court later expanded that holding to include civil administrative matters. *Ohio Civil Rights Commission, et al., v. Dayton Christian Schools, Inc., et al.*, 477 U.S. 619 (1986); *Middlesex County v. Garden State Bar Assoc.*, 457 U.S. 423 (1982).

---

[3] *Younger* is at issue here because plaintiff seeks injunctive relief. *Younger*, 401 U.S. at 41-44; Doc. # 1.

Abstention is designed to promote "federal-state comity, [and] is required when to render a decision would disrupt the establishment of coherent state policy." *Akenbrandt v. Richards*, 504 U.S. 689, 704-05 (1992). The exercise of abstention is the exception, not the rule. Abstention should rarely be invoked because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). However, "[w]here vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims." *Middlesex County*, 457 U.S. at 432; *Moore v. Sims*, 442 U.S. 415, 425-426 (1979).

Generally, abstention is appropriate under *Younger* if: 1) state judicial proceedings are ongoing; 2) the state proceedings implicate important state interests; and 3) the state proceedings afford an adequate opportunity to raise federal questions.[4]  *Middlesex,* 457 U.S. at 432.

**A.     THE ONGOING STATE PROCEEDINGS ARE JUDICIAL IN NATURE**

Plaintiff asserts that *Younger* is inapplicable because the state proceeding highlighted here is not "judicial" in nature, but is rather executive and legislative in nature. (Doc. # 9 at 7-11). In so arguing, Plaintiff neglects to inform the Court as to *how* or *why* the state administrative proceeding is either legislative or executive in nature, and the Court will not form

---

[4] The mere presence of the preemption issue does not modify the classic *Younger* analysis because state courts have concurrent jurisdiction to decide the preemption question. *CSXT, Inc. v. Pitz*, 883 F.2d 468, 471 (6th Cir. 1989) *cert. denied*, 494 U.S. 1030 (1990). "State Courts are as capable as federal courts of deciding preemption claims." *Dyck v. McReynolds*, No. 90-5581, 1991 U.S. App. LEXIS 4167, at * 6 (6th Cir. Mar. 7, 1991) (citing *CSXT*, 883 F.2d at 473).

Plaintiff's argument for it.[5]  Defendants counter that the state proceeding is, in fact, judicial in nature.  (Doc. # 8 at 7-11; Doc. # 10 at 5-8).

The Supreme Court requires federal courts to abstain from interfering in pending state administrative proceedings that are "judicial in nature."  *New Orleans Public Service, Inc., v. City of New Orleans*, 491 U.S. 350, 370 (1989).[6]  When determining whether an administrative proceeding is judicial in nature for purposes of *Younger* abstention, a court must examine the "nature of the final act."  *Id.* at 371.  According to the Supreme Court, a judicial inquiry "investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist."  *Id.* at 370.

There can be no question that the administrative proceeding at issue here is judicial in nature.  This case involves an application for a license.  Once the application and supporting materials have been submitted to the Department, the Department, on behalf of the Superintendent, investigates the application.  (Doc. # 1 Ex. 1).  Specifically, the Department looks into past and present facts to determine whether the applicant should receive the desired license under Ohio's existing laws.  *See id.*

---

[5] Plaintiff apparently relies upon *Women's Medical Professional Corp. v. Baird*, No. C2-03-162, 2003 U.S. Dist. LEXIS 15873 at *9-10 (S.D. Ohio 2003), for the proposition that the state administrative licensing proceeding at issue here is "an exercise of the state's executive power."  (Doc. # 9 at 8).  However, that citation refers to a portion of the opinion that dealt only with Defendant's order to stop operating an abortion clinic–the citation does not pertain to a licensing application.  *Id.* ("Plaintiffs ask the Court to enjoin Defendant's order to stop operating an abortion clinic. Not only is there no pending state proceeding regarding this order, Defendant's issuance of this order was an executive action, not a judicial proceeding").  As such, Plaintiff's citation to *Baird* fails to aid its cause.

In this instance, the Department concluded its investigation and *alleged* that "BB & T is prohibited by the laws and/or regulations of this state from being licensed as a business entity title insurance agent." (Doc. # 1 Ex. 1) (Emphasis added).  The Department notified BB & T that it had a right to request a hearing under Chapter 119 of the Ohio Revised Code, and further stated:

> At the hearing, BB & T may appear in person, by its attorney, or by such other representative as is permitted to practice before the agency, or it may present its position, arguments or contentions in writing and, at the hearing, it may present evidence and examine witnesses appearing for and against it.

*Id.*

BB & T did request a hearing and it is currently scheduled for April 25, 2006. (Doc. # 9 at 7).  Pursuant to O.R.C. § 119.09, a licensed attorney will be appointed to serve as a hearing examiner at that hearing.  The hearing examiner will conduct the hearing, at which time each side may present its arguments and evidence.  After the hearing, the hearing examiner will examine the record and prepare a Report and Recommendation ("R & R") detailing the examiner's recommendation to the Superintendent.  Parties have the option of filing objections to the R & R.  The Superintendent is then required to review the entire record, including the R & R and any objections thereto, before issuing an adjudication order addressing the disposition of the license application.

It is hard to imagine a proceeding that could be more judicial in nature than the procedure described above.  The Department reviews the application, makes a preliminary determination about whether past and present facts support granting the application under existing laws, and affords the applicant an opportunity to present evidence and witnesses at a hearing.  Should the

7

applicant exercise its right to a hearing, the parties may file objections to the hearing examiner's R & R.  Moreover,  the Superintendent is required to consider the entire record before rendering her decision on the license application.  During this entire process, the Department operates under laws that already exist and does not create new rules.  Because the Department investigates past and present facts and applies its finding to laws already existing, the Court concludes that the state administrative proceeding being examined here is judicial in nature.  *See Sun Refining & Marketing Co. v. Brennan*, 921 F.2d 635, 640 (6th Cir. 1990); *see also Citizens for a Strong Ohio, et al., v. Marsh, et al.*, 123 Fed. Appx. 630, 634 (6th Cir. 2005) (concluding that proceedings before the Ohio Elections Commission ("OEC") were judicial in nature because "OEC hearings are initiated by a complaint, parties may present and cross-examine evidence, and a decision or opinion is issued, often with an explanation.  Furthermore, unsuccessful parties may appeal the OEC's decision in the Franklin County Court of Common Pleas, and if unsuccessful there, may seek further review in Ohio appellate courts."  Plaintiff in the case *sub judice* have the same appeal rights under O.R.C. § 119.12).

The second prong of *Younger's* first requirement is also satisfied here.  That is, the state administrative proceeding is ongoing.   In *Zalman v. Armstrong*, 802 F.2d 199, 204 (6th Cir. 1986), the Sixth Circuit stated that the "proper time of reference for determining the applicability of *Younger* abstention is the time that the federal complaint is filed."  Under this rule, if a state proceeding is pending at the time the action is filed in federal court, the second aspect of the first criteria for *Younger* abstention is satisfied.

As previously noted, the Department sent BB & T a Notice of Opportunity for hearing on December 9, 2005. (Doc. # 1 Ex. 3).  Thus, the state proceeding commenced on that day.  *State*

*ex rel. Ohio Dep't of Health v. Sowald, et al.*, 603 N.E.2d 1017, 1020 (Ohio 1992).  This case was filed on January 6, 2006. (Doc. # 1).  Consequently, the Court concludes that the state proceeding was ongoing at the time the instant action commenced.

In addition, BB & T requested a hearing pursuant to O.R.C. § 119.12 on January 6, 2006, and that hearing is currently scheduled for April 25, 2006.  (Doc. # 9 at 7).  The state administrative proceeding is therefore pending.  In fact, BB & T fails to argue with any enthusiasm that the administrative action is not ongoing as of the time of this action because BB & T seeks an injunction to stop that hearing. (Doc. # 1 ¶ 62).  The Court therefore holds that the administrative proceeding is currently pending.

**B.      THE STATE ADMINISTRATIVE PROCEEDINGS INVOLVE IMPORTANT STATE INTERESTS.**

The state administrative proceeding pertains to licensing title insurance.  (Doc. # 1 Ex. 2). The Sixth Circuit has held that the regulation of insurance is "clearly" an important state interest. *Dyck*, 1991 U.S. App. LEXIS 4167 at * 7; *see also Blue Cross & Blue Shield v. Baerwaldt*, 726 F.2d 296, 299 (6th Cir. 1984) (holding that the "regulation of insurance companies clearly involves important state interests"); *see also* 15 U.S.C. § 1012(a) (2005) (stating "the business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business").

**C.      THE STATE PROCEEDINGS OFFER AN ADEQUATE OPPORTUNITY TO RAISE FEDERAL QUESTIONS.**

9

Plaintiff asserts that the state proceedings are inadequate because it cannot raise constitutional issues at the Department's hearing.  (Doc. # 9 at 12).  Despite Plaintiff's argument, the Court joins the United States Supreme Court in concluding that the state proceedings afford Plaintiff an adequate opportunity to raise federal questions.

It is true that Plaintiff is unable to raise constitutional issues before the Department. However, the Supreme Court held in *Dayton Christian Schools* that the mere fact that the state agency cannot consider constitutional claims does not prevent the application of the *Younger* abstention doctrine as long as the constitutional claims could be presented on review in state court.  *Dayton Christian Schools*, 477 U.S. at 629;  *Middlesex*, 457 U.S. at 436; *see Watts v. Burkhart*, 854 F.2d 839, 847-848 (6th Cir. 1988).

Ohio's statutory scheme provides for such a review.  Should the Superintendent ultimately decide to deny BB & T's application, Ohio Revised Code § 119.12 allows Plaintiff to file an appeal in the Franklin County Court of Common Pleas.[7]  Constitutional issues may be

---

[7] Ohio Rev. Code §  119.12 provides in pertinent part:
> Any party adversely affected by any order of an agency issued pursuant to an adjudication denying an applicant admission to an examination, or denying the issuance or renewal of a license or registration of a licensee, or revoking or suspending a license, or allowing the payment of a forfeiture under section 4301.252 [4301.25.2] of the Revised Code, may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident, except that appeals from decisions of the liquor control commission, the state medical board, state chiropractic board, and board of nursing shall be to the court of common pleas of Franklin county. If any such party is not a resident of and has no place of business in this state, the party may appeal to the court of common pleas of Franklin county.

raised at that juncture.  Should BB & T's efforts prove unsuccessful there, it may seek further review in Ohio appellate courts.  As such, the Court holds that the state proceedings afford Plaintiff an adequate opportunity to raise federal questions under *Dayton Christian Schools* and *Middlesex*.

### D.     NO EXCEPTIONS APPLY TO PROHIBIT THE APPLICATION OF THE *YOUNGER* DOCTRINE.

Having determined that each of the *Younger* requirements is satisfied, the Court turns next to the issue of whether any exceptions to the doctrine should apply to prevent the Court from abstaining under the doctrine.  The three exceptional circumstances under which *Younger* becomes inapplicable include whether the state proceeding is pursued with an intent to harass, is conducted in bad faith, or where the challenged state statute or authority is flagrantly and patently unconstitutional.  *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 603-613 (1975).

Plaintiff fails to argue that any exceptions are present here.  (Doc. # 9).  In addition, the record is devoid of evidence of harassment and bad faith by ODI and the Superintendent.  Moreover, Ohio Rev. Code § 3953.21(B) does not appear to be flagrantly and patently unconstitutional.  Therefore, the Court shall abstain from exercising jurisdiction over this matter pursuant to the *Younger* abstention doctrine.

## CONCLUSION

Defendants' motion to dismiss is **GRANTED**.  (Doc. # 8).  The Court will not address Plaintiff's motion for a temporary restraining order.  (Doc. # 5).  This case is **DISMISSED** and the Clerk shall terminate the case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division at Columbus.

**IT IS SO ORDERED.**

     /s/   Gregory L. Frost
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**